**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | |
|---|---|
| IN RE:<br>WASHINGTON GROUP INTERNATIONAL, INC., et al.,<br><br>DAVID HATHAWAY; KAREN HATHAWAY;<br>  Appellants,<br><br>vs.<br><br>RAYTHEON ENGINEERS & CONSTRUCTORS, INC., et al.; PLAN COMMITTEE,<br><br>  Appellees. | 3:09-CV-00058-ECR-RAM<br>BK-N-01-31627-GWZ<br>B.A.P. No.: NV-09-1009<br><br>**Order** |

This case is an appeal from an order of the bankruptcy court, docketed on December 24, 2008, denying Appellants' "Motion for Order Authorizing Payment of State Court Judgment Solely From Available Insurance Proceeds." Though the factual background here is somewhat involved, the question presented by the appeal is relatively straightforward: may a tort claimant recover post-petition interest on a judgment against a debtor from the debtor's insurer despite provisions of the Bankruptcy Code and the confirmed reorganization plan that prohibit accrual and payment of post-petition interest on claims against the debtor? The bankruptcy court answered this question in the negative. For the reasons stated below, we agree. As such, the bankruptcy court's order will be affirmed.

## I. Factual and Procedural Background

On January 15, 1999, Appellants brought suit in Massachusetts state court, alleging that Raytheon Engineers and Constructors, Inc. ("RE&C"), among others, was liable for injuries David Hathaway had suffered in a 1997 work accident. (Appellants' App. ("AA") 132 (#9); see also AA 4.) RE&C was subsequently acquired by Washington Group International, Inc. ("WGI"), and merged into a subsidiary of WGI. (AA 283-84.) Then, on May 14, 2001, WGI and other related entities (collectively, "Debtors") filed for Chapter 11 bankruptcy. (AA 219.) Appellants filed a proof of claim in the bankruptcy on August 27, 2001. (AA 2-4.)

On December 21, 2001, the bankruptcy court entered an order confirming the Debtors' Second Amended Joint Plan of Reorganization, as modified by the First Modification, the Second Modification, and the Third Modification ("the Plan"). (AA 45-81.) The Plan became effective on January 25, 2002. (AA 220.) Section 8.5 of the Plan establishes the procedure to be followed with regard to tort claims, such as that of Appellants: the claim is to be "tried and liquidated" in the forum in which it was pending on the effective date of the Plan, with the Debtor as a nominal defendant only, and any recovery to be paid solely from the proceeds of available insurance and not from the property of any Debtor. (AA 8, 66-67.) After the exhaustion of available insurance, any balance remaining

2

on the tort claim becomes an "allowed claim," treated as a general unsecured claim under Class 7 of the Plan.[1]  (AA 8, 21, 29.)

Pursuant to this procedure, Appellants' tort claim against RE&C was tried in Massachusetts state court, and a judgment was awarded in favor of Appellants and against RE&C in an aggregate amount of $7,950,000.  (AA 133.)  Under Massachusetts law, a judgment in favor of a plaintiff in a personal injury action accrues interest at a rate of twelve percent per annum from the date of the commencement of the action.  MASS. GEN. LAWS. ch. 231, § 6B.  The judgment entered by the Massachusetts state court reflects that it is to accrue interest from January 15, 1999.  (AA 133.)  In this appeal, at least, there is no dispute about the base amount of the judgment or interest that accrued on the judgment between January 15, 1999, and May 14, 2001, the date on which Debtors filed for bankruptcy.  RE&C is insured in an amount exceeding the judgment plus the amount of interest that accrued during that period.[2]  (AA 215-16.)  As such, under Section 8.5 of the Plan, Appellants may collect the judgment and interest accrued during that period from RE&C's insurer.  (AA 8, 66-67.)

---

[1] The bankruptcy court determined that Appellants' claim would never become an "allowed claim" under the Plan, because sufficient insurance exists to cover the entire claim.  (AA 105.)

[2] Appellants' claim is covered by a primary policy for $5 million and an excess policy of $25 million.  (AA 215.)  RE&C's insurer is National Union Fire Insurance Company, which is a part of the American Insurance Group.  Appellants refer to RE&C's insurer as "AIG," while Appellees prefer "National Union," and the parties engage in a battle of footnotes over which term is more appropriate.  (See Answering Brief at 1 n.1 (#14); Reply Brief at 1 n.1 (#16).)  We need not resolve this dispute.

3

The dispute now before the Court relates to interest on the judgment accruing on or after May 14, 2001. The judgment has not yet been paid, thus, under the terms of the judgment entered by the Massachusetts state court, interest would continue to accrue. Section 7.2 of the Plan, however, provides that "[u]nless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim." (AA 32.) Appellees sought to have the Massachusetts state court amend the judgment to reflect that the Plan prohibited the accrual or payment of post-petition interest. (AA 204-213.) The Massachusetts state court acknowledged that the Plan appeared to prohibit the accrual or payment of post-petition interest, but declined to alter the judgment. (AA 212-13.) Instead, the Massachusetts state court ordered that the judgment not be paid until approved by the bankruptcy court. (AA 213.)

Both parties have appealed the Massachusetts state court's ruling; those appeals are still pending. (AA 223.) In the meantime, Appellants sought an order from the bankruptcy court authorizing the payment of the judgment, including post-petition interest, by RE&C's insurer. (AA 218-230.) RE&C opposed (AA 232-248) the motion, while the Plan Committee took no position on the matter, since Appellants did not seek any distribution from the bankruptcy estate. (AA 250-251.) The bankruptcy court agreed with RE&C, issuing an order on December 24, 2008, finding that Appellants are entitled to payment by RE&C's insurer of the judgment in the

4

1 amount of $7,950,000 in damages plus pre-petition interest, but not
2 post-petition interest.  (AA 339-43.)
3     Appellants' appeal of the bankruptcy court's order was filed on
4 February 2, 2009.  Appellants filed their opening brief (#8) on
5 February 27, 2009, together with Appellants' Appendix (#9).
6 Appellees filed their answering brief (#14) on March 24, 2009,
7 together with Appellees' Appendix (#15).  Appellants filed a reply
8 brief (#16) on April 6, 2009, and, with leave of the Court (#18),
9 filed a supplemental appendix (#22) on January 22, 2010.  A hearing
10 on the appeal was held on February 18, 2010.

## II. Jurisdiction

The district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), as well as certain interlocutory orders described in 28 U.S.C. § 158(a)(2).  A party may also, "with leave of the court," appeal from other interlocutory orders and decrees pursuant to 28 U.S.C. § 158(a)(3).  See In re City of Desert Hot Springs, 339 F.3d 782, 787 (9th Cir. 2003) (noting that the district court must hear appeals from final decisions of the bankruptcy courts, but it is within the discretion of the district court to hear appeals of interlocutory orders).

Here, the bankruptcy court's order with respect to Appellants' motion constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1) because it represents the bankruptcy court's final resolution of the parties' rights with regard to Appellants' claim. See id. at 788 (describing the Ninth Circuit's "'pragmatic' approach

5

1 to deciding whether orders in bankruptcy cases are final,
2 'recognizing that certain proceedings in a bankruptcy case are so
3 distinct and conclusive either to the rights of individual parties
4 or the ultimate outcome of the case that final decisions as to them
5 should be appealable as of right.'") (quoting <u>In re Mason</u>, 709 F.2d
6 1313, 1317 (9th Cir. 1983)).  As such, we have jurisdiction over the
7 appeal pursuant to section 158(a)(1).
8
9 **III. Standard of Review**
10     The parties dispute what standard of review is appropriate.
11 Appellants argue that the appeal involves only questions of law that
12 are reviewed de novo, while Appellees argue that the more
13 deferential abuse of discretion standard should be applied to the
14 bankruptcy court's interpretation of the Plan and the bankruptcy
15 court's confirmation order.  (<u>See</u> Opening Brief at 1 (#8); Answering
16 Brief at 1-3 (#14); Reply Brief at 2-3 (#16).)  In a sense, both
17 parties may be partially correct.  To the extent that our Order
18 evaluates the bankruptcy court's application of the Bankruptcy Code
19 to the Plan, de novo review of questions of law is appropriate.  <u>See</u>
20 <u>Temecula v. LPM Corp. (In re LPM Corp.)</u>, 300 F.3d 1134, 1136 (9th
21 Cir. 2002).  To the extent that our Order reviews the bankruptcy
22 court's interpretation of its confirmation order and the Plan
23 itself, a more deferential abuse of discretion review may be
24 appropriate, though neither the Ninth Circuit Court of Appeals nor
25 the Ninth Circuit BAP has ruled on the issue.  <u>See, e.g.</u>, <u>Travelers</u>
26 <u>Indem. Co. v. Bailey</u>, 129 S. Ct. 2195, 2204 n.4 (2009) (noting that
27 "[n]umerous Courts of Appeals have held that a bankruptcy court's
28
6

interpretation of its own confirmation order is entitled to substantial deference" and collecting cases); but see <u>In re Consolidated Water Utilities, Inc.</u>, 217 B.R. 588, 590 (B.A.P. 9th Cir. 1998) (discussing Ninth Circuit case law that may suggest deference should not be given).

No part of our discussion below, however, turns on the applicable standard of review.  On each issue presented by this appeal, we would reach the same conclusion regardless of whether we apply the de novo or the abuse of discretion standard.  As such, the parties' dispute on this issue is immaterial.

### **IV. Discussion**

Appellants' appeal rests heavily on the notion that Appellants have a right under Massachusetts law to recover the full amount of the state court judgment, including interest, directly from RE&C's insurer.  Thus, Appellants assert, their claim is not a claim against the bankruptcy estate per se, but rather against a third party, whose obligations are improperly discharged by the bankruptcy court's order.  On this basis, Appellants insist that neither the terms of the confirmed reorganization plan, nor the Bankruptcy Code, require the bankruptcy court to deny Appellants' motion.  To the contrary, Appellants object that the bankruptcy court's order is a violation of the well-established principle that a discharge in bankruptcy releases the personal liability of a debtor, but that the debt still exists and can be collected from any other entity that might be liable.  (Opening Brief at 10 (citing <u>Houston v. Edgeworth</u>

1  (In re Edgeworth), 993 F.2d 51, 53 (5th Cir. 1993); Underhill v.
2  Royal, 769 F.2d 1426, 1431-32 (9th Cir. 1985); 11 U.S.C. § 542(e)).)
3       Appellants' argument is unpersuasive for several reasons.
4  First, Appellees correctly note that Massachusetts is not a "direct
5  action" state.  That phrase normally refers to the several states
6  that permit "a party suffering injuries or damage for which another
7  is legally responsible to bring suit against the other's liability
8  insurer without joining the insured or first obtaining a judgment
9  against him."  Beckham v. Safeco Ins. Co. of Am., 691 F.2d 898, 901-
10 902 (9th Cir. 1982); see, e.g., LA. REV. STAT. ANN. § 22:1269(B)(1);
11 see also Travelers Indem. Co., 129 S. Ct. at 2199 n.2 (defining a
12 "true 'direct action' suit" as "[a] lawsuit by a person claiming
13 against an insured but suing the insurer directly instead of
14 pursuing compensation indirectly through the insured") (citing
15 Black's Law Dictionary 491 (8th ed. 2004)).  Massachusetts law does
16 not provide for such an action.  See Rogan v. Liberty Mut. Ins. Co.,
17 25 N.E.2d 188, 189 (Mass. 1940) (noting that the "statutes affording
18 a remedy for an injured plaintiff against an insurer issuing a
19 liability policy require as a prerequisite to suit the recovery of a
20 final judgment against the insured wrongdoer") (internal quotation
21 marks omitted).  In keeping with this procedure, the judgment
22 entered by the Massachusetts state court was against RE&C, not
23 RE&C's insurer.  (AA 133.)  Appellants do not, apparently, dispute
24 this characterization of Massachusetts law, though they assert that
25 it is irrelevant.  (Reply Brief at 5 n.4 (#16).)
26       Instead, Appellants argue that when they obtained a judgment
27 against RE&C, that "triggered a right under state law to recover the
28                                    8

full amount of the judgment directly from the debtor's liability insurer." (Opening Brief at 25 (#8).) This argument is based on two Massachusetts statutes. Massachusetts law provides that an insurer's liability under any policy "insuring against liability for loss or damage on account of bodily injury or death shall become absolute whenever the loss or damage for which the insured is responsible occurs . . . ." MASS. GEN. LAWS ch. 175, § 112 ("section 112"). Another statute provides that "if the judgment debtor was at the accrual of the cause of action insured against liability therefor, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment . . . ." MASS. GEN. LAWS ch. 175, § 113 ("section 113"). From these two statutes, Appellants conclude that RE&C's insurer has a direct obligation under Massachusetts law, separate from and independent of RE&C's obligation, to satisfy the judgment against RE&C, in its entirety and including any statutory interest on the judgment.

    Appellants place more weight on these two statutes than they are capable of bearing. Section 112 was adopted in order to invalidate provisions in insurance policies, previously held to be valid and enforceable, that the insurer was to be liable only for losses actually paid by the insured. See Saunders v. Austin W. Fishing Corp., 224 N.E.2d 215, 217 (Mass. 1967). Section 113 permits the proceeds of an insurance policy to be reached and applied in satisfaction of a judgment against the insured. Id. at 218. Massachusetts courts do not appear to have interpreted these statutes to create a separate and independent liability for insurers, as Appellants urge us to do. Rather, Massachusetts courts

9

view the insurer as bound by contract to satisfy the personal liability of the insured to a third-party intended beneficiary. See Flattery v. Gregory, 489 N.E.2d 1257, 1261-62 (Mass. 1986). This is an obligation that is "absolute" in the sense that it cannot be avoided by insurance clauses that purport to limit the insurer's liability to the amount that the insured actually paid, and the injured third-party may bring suit to collect on the insured's liability directly from the insurer. Id.; Saunders, 224 N.E.2d at 218; Mass. Gen. Laws ch. 175, §§ 112, 113. The insurer's liability, however, can be no greater than that of the insured, because the insurer's only obligation under the insurance contract is to satisfy the personal liability of the insured to the third-party beneficiary. See Flattery, 489 N.E.2d at 1262 ("B promises A to pay whatever debts A may incur in a certain undertaking.") (quoting Restatement (Second) of Contracts § 302, illustration 3); see also Hipke v. Kilcoin, 279 F. Supp. 2d 1089, 1093 (D. Neb. 2003) (discussing the circumstance where a tort action has been litigated against an insured tortfeasor, and noting that the insurer "is then subject to suit to collect on the judgment because it holds an asset of the insured. The insurer is in no different posture from any other person or entity that holds assets of the judgment debtor."). It follows from this approach that where the insured's personal liability to the third-party is limited or reduced for one reason or another, so too would the insurer's liability to the third-party be limited or reduced.

    Moreover, it is well established that a creditor's state law rights are subordinate to the operation of federal bankruptcy law.

See BFP Resolution Trust Corp., 511 U.S. 531, 545 (1994) (operation of the Bankruptcy Code is "unimpeded by contrary state law" where the "meaning of the Bankruptcy Code's text is itself clear"); In re Mankin, 823 F.2d 1296, 1308 (9th Cir. 1987) ("Congress can, and often has, exercised its bankruptcy power to modify, or even abrogate, creditors' rights in the independent federal interest of providing equitable restructuring or liquidation of a bankrupt's estate."). Though pre-petition interest is governed by state law, entitlement to post-petition interest "has long been decided by federal law." Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 164 (1946)[3]; see also In re Cardelucci, 285 F.3d 1231, 1235 (9th Cir. 2002) ("[O]nce a bankruptcy petition is filed, federal law, not state law, determines a creditor's rights.") (quoting Bursch v. Beardsley & Piper, 971 F.2d 108, 114 (8th Cir. 1992)). Thus, once the bankruptcy petition was filed in this case, the Massachusetts statute that would otherwise provide for post-petition interest on the judgment, Mass. Gen. Laws ch. 231, § 6B, ceased to apply in that regard.[4] Post-petition interest could only accrue on the judgment if federal law so provided.

---

[3] Some of the holdings of Vanston were superceded by the Bankruptcy Act of 1978, but the statement for which we cite the case remains law.

[4] It is immaterial that the Massachusetts state court judgment incorporated the terms of Mass. Gen. Laws ch. 231, § 6B, by specifying that interest on the judgment would accrue from the date of the commencement of the action. The state court judgment is considered to be state law for purposes of determining the validity of claims. See Punton v. Chapman (In re Chapman), 125 B.R. 284, 286 (Bankr. S.D. Cal. 1991). As noted above, federal law, not state law, controls regarding a creditor's entitlement to post-petition interest.

11

1   The Bankruptcy Code prohibits claims for post-petition interest on unsecured claims, such as that of Appellants.  11 U.S.C. § 502(b)(2) ("section 502(b)(2)") (providing for the allowance of certain claims against a bankrupt estate "except to the extent that . . . such claim is for unmatured interest"); In re Del Mission, 998 F.2d 756, 757 (9th Cir. 1993); see also 4-502 COLLIER ON BANKRUPTCY ¶ 502.03[3][a] (2009) (stating that "section 502(b)(2) prohibits payment of postpetition interest on prepetition unsecured claims"); In re U.S. Lines, Inc., 199 B.R. 476, 480-481 (Bankr. S.D.N.Y. 1996) (discussing the definition of "unmatured interest").  As we noted above, the Plan is consistent with the Bankruptcy Code's general prohibition on post-petition interest, providing that ""[u]nless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim."  (AA 32.)  Appellants' suggestion that the Plan is ambiguous in this regard is without merit.  (See Opening Brief at 29-30 (#8).)

Appellants also make much of the clause ". . . or required by applicable bankruptcy law," suggesting that 11 U.S.C. § 524(e) represents "applicable bankruptcy law" that requires accrual and payment of post-petition interest.  (Opening Brief at 22-24 (#8).)  We disagree.  Section 524(e) states that, with exceptions not applicable here, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  The prohibition on the accrual of post-

12

petition interest, however, is a "discharge of a debt of the debtor" only in a colloquial sense — RE&C's insurer will not have to pay post-petition interest that it would otherwise have to pay, absent the bankruptcy. It is not a "discharge" in the technical sense that the term is used in section 524(e). A discharge is a legal bar to recovery or collection of a debt as a personal liability of the debtor. See 11 U.S.C. § 524(a); In re Am. Hardwoods, Inc., 885 F.2d 621, 626 (9th Cir. 1989). Because of the prohibition of post-petition interest in the Plan and the Bankruptcy Code, no post-petition interest ever accrued to become a part of RE&C's debt to Appellants. In other words, the prohibition on post-petition interest is a limitation on Appellants' claim, a modification or partial abrogation of Appellants' rights, not a discharge of the claim. See In re Mankin, 823 F.2d at 1308. The claim itself — the judgment, plus pre-petition interest — is not discharged; thus, section 524(e) does not apply here.

## V. Conclusion

The obligation of RE&C's insurer is to pay RE&C's debt to Appellants. Under the Plan and the Bankruptcy Code, RE&C's debt is limited to the amount of the judgment for damages against it, plus any interest on that judgment that accrued pre-petition. That debt may be satisfied only by means of the available insurance proceeds, not by payment of funds from the bankruptcy estate. RE&C's debt does not include post-petition interest; though such interest would have accrued under Massachusetts law had it been controlling, under the Plan and the Bankruptcy Code no post-petition interest was

permitted to accrue.  Thus, the Bankruptcy Court properly denied Appellants' motion seeking an order authorizing payment by RE&C's insurer of the entirety of the state court judgment against RE&C, including the post-petition interest that would have accrued under state law.

**IT IS, THEREFORE, HEREBY ORDERED** that the bankruptcy court's order (AA 339-43) of December 24, 2008, denying Appellants' "Motion for Order Authorizing Payment of State Court Judgment Solely From Available Insurance Proceeds," is **AFFIRMED**.

The Clerk shall enter judgment accordingly.

DATED: March 25, 2010.

_____
UNITED STATES DISTRICT JUDGE

14